**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

O.W., a minor, by his next friend and parent,
SANTRAYIA BASS,

      Plaintiff,

          v.                          Civil Action No. 2:21-cv-448

SCHOOL BOARD OF THE CITY OF
VIRGINIA BEACH, *et al.*,

      Defendants.

**MEMORANDUM OPINION**

Plaintiff O.W., a minor, brings this action through his next friend and mother Santrayia Bass, against the City of Virginia Beach, Officer Marie Carr (together, the "City Defendants"), the School Board of the City of Virginia Beach ("School Board"), former Kempsville Middle School acting Assistant Principal Reid Baker, Virginia Beach Public Schools Superintendent Aaron C. Spence, members of the Virginia Beach School Board,[1] and former Kempsville Middle School Principal Patti T. Jenkins (together, the "School Defendants").

Plaintiff filed this civil rights action after he was charged with possession and distribution of child pornography in the Virginia Beach Juvenile and Domestic Relations Court ("Juvenile and Domestic Relations Court"). The charges resulted from allegations that Plaintiff had shown and sent an explicit photograph to other students at Kempsville Middle School ("Kempsville"). After making a finding of guilt, the state court deferred disposition and ultimately dismissed the charges.

---

[1]     Dan Edwards, Carolyn T. Rye, Kimberly A. Melnyk, Beverly M. Anderson, Sharon R. Felton, Dottie Holtz, Laura K. Hughes, Victoria Manning, Trenace B. Riggs, Carolyn D. Weems, and Joel McDonald.

Order, Commonwealth of Va., ECF No. 120-1. Plaintiff asserts constitutional violations under 42 U.S.C. § 1983 and brings a variety of other claims under federal and state law. *See generally*, Second Am. Compl. ("SAC"), ECF No. 53.

For the reasons set forth below, the Court will grant summary judgment in favor of Defendants and deny summary judgment to O.W. As to O.W.'s Motion and Accompanying Memorandum for Leave to File a Third Amended Complaint ("Motion to File a Third Amended Complaint"), ECF No. 109, the Court will deny the motion without prejudice, and direct O.W.— if he desires to continue the prosecution of his case in this forum—to file a revised motion within thirty (30) days from today's date. As to the remainder of the pending motions, Defendants' Motions to Dismiss will be denied as moot, ECF Nos. 62, 64; City Defendants' Motion for Leave to File Amended Answer will be granted, ECF No. 136; School Defendants' Motion for Leave to File Amended Answer will be denied as moot, ECF No. 96; O.W.'s Objection and Emergency Motion and Accompanying Memorandum to Strike Exhibits ("Motion to Strike") will be denied with prejudice, ECF No. 121; and O.W.'s Motion to Amend Reply Brief will be granted, ECF No. 145.

## I. BACKGROUND

For purposes of the factual background, the Court recites the basic allegations in Plaintiff's Second Amended Complaint and the undisputed fact sections of the parties' memoranda in support of summary judgment. Except as otherwise indicated, the parties do not dispute the facts stated below.

### A. Facts

In 2019, O.W. was a 13-year-old student at Kempsville. SAC ¶ 18. On March 5, 2019, while at school, O.W. showed at least two classmates an explicit photograph on his cellular phone

of a 14-year-old female student, A.F. School Defendants' Statement of Undisputed Material Facts ("SSUF") ¶¶ 20, 21, ECF No. 118. That same day, O.W. also sent[2] the photograph to another student, G.C.[3] *Id.* ¶ 21. The photograph was of A.F.'s vagina. *Id.* ¶ 14. A.F. had sent O.W. the explicit photograph through Snapchat four months prior, at home, in the evening. *Id.* According to O.W., "everyone was talking about" the photograph and "asking him . . . if A.F. had really sent it to him." *Id.* ¶ 22.

Later that afternoon, after O.W. had shown the photograph to at least two classmates and sent it to G.C., a teacher reported to Mr. Baker that O.W. may have an explicit image of a female student. *Id.* ¶ 24. Mr. Baker was the acting Assistant Principal at the time. *Id.* ¶ 5. Mr. Baker took O.W. out of class, brought him to Kempsville's printing room, and asked him about an image circulating around campus. *Id.* ¶ 29. The police officer working at Kempsville, Officer Carr, was not present during this initial discussion. *Id.* ¶ 30. At some point, Mr. Baker "confiscated Plaintiff's phone" and "searched the photo gallery of the phone and did not find the photograph." SAC ¶ 30.[4]

Following the questioning in the printing room, Mr. Baker took O.W. to the lobby of the school guidance office. SSUF ¶ 31. At the request of Mr. Baker, O.W. wrote two different incident

---

[2]     While the record is not clear, it appears O.W. may have sent the image to G.C. in a text message. *See* Carr Dep. 76:8–22, ECF No. 113-1; O.W. Dep. 30:9–15, ECF No. 113-3.

[3]     The pleadings at various points also refer to this minor as "G.R."

[4]     The record is not clear as to when this search occurred. O.W. contends in his Second Amended Complaint that after the search, Mr. Baker searched the phone, and at Officer Carr's direction "BAKER put Plaintiff's phone in airplane mode, powered it off, and placed it directly into the police evidence bag held by Carr." SAC ¶ 30. This suggests the search occurred in Officer Carr's presence. However, O.W.'s deposition testimony appears to place Mr. Baker's search earlier in time. *See* O.W. Dep. 46:19–47:22, ECF No. 113-3 ("Q: And after you told Mr. Baker that you had shown the photo to others, sent it to [], he confiscated your phone, correct? A: No, he already confiscated it . . . .").

statements. *Id*. Mr. Baker asked O.W. to write a second statement because he believed O.W. was not telling the entire story in the first statement. City Defendants' Statement of Undisputed Material Facts ("CSUF") ¶ 21, ECF No. 116. O.W. wrote in the second statement: "I showed people the photo and that was my bad." O.W. Dep. 36:15–38:1, ECF No. 113-3.[5] Mr. Baker then took O.W. to a room connected to the guidance office and asked him further questions about his statements. CSUF ¶ 23. The door to the room was kept open. *Id*. ¶ 25. Officer Carr entered the room after Mr. Baker's questioning started. *Id*. ¶ 27.

During the interview in the guidance office, although O.W. had previously admitted to *showing* other students the photograph, he initially denied that he still *possessed* it. Plaintiff's Statement of Undisputed Material Facts ("PSUF") ¶ 25, ECF No. 123. Mr. Baker advised O.W. about the importance of being honest. Baker Dep. Vol. I 44:9–11, ECF No. 113-4. Officer Carr did not ask O.W. any questions at this point. SAC ¶ 26; CSUF ¶ 25. O.W. then admitted that he still possessed the photograph on his phone and that he sent it to another student.[6] CSUF ¶ 27. After hearing the oral confession, Officer Carr left the room and contacted her supervisor to ask how to proceed. CSUF ¶ 28. Officer Carr was referred to an individual in the Commonwealth's Attorney's Office who advised Officer Carr to charge O.W. and G.C., but not to charge A.F. *Id*. Following this discussion, Officer Carr reentered the room with O.W.'s seized phone and asked O.W. to show her the explicit photograph. *Id*. ¶ 29. In response to Officer Carr's request, O.W. showed Officer Carr the photograph. *Id*.

---

[5]     O.W. avers he "did not say that the photograph was a nude image in [his] first statements" and that he "did not say that A.F. was in the photograph in [his] first statements." Rule 56 Affidavit of O.W. ¶¶ 7–8, ECF No. 131-2.

[6]     O.W. testified that Mr. Baker "never asked [him] who [he] sent the picture to." O.W. Dep. 44:19–24, ECF No. 113-3. The record suggests Mr. Baker and Officer Carr determined it was G.C. from Mr. Baker's separate discussion with G.C. Carr Dep. 54:25–55:5, ECF No. 113-1.

Mr. Baker also spoke to other students, including G.C. and A.F. *Id*. ¶ 30. Officer Carr was not present during those interviews, but overheard Mr. Baker's questioning of G.C. *Id*. Based on the information he collected, Mr. Baker referred O.W. for infractions of the Code of Student Conduct. *Id*. ¶ 32. O.W.'s mother, Ms. Bass, was contacted around 4:10 p.m. and arrived at the school around 5:00 p.m. SSUF ¶ 49. Officer Carr placed O.W. and G.C. under arrest. CSUF ¶ 32. Officer Carr informed Ms. Bass that O.W. would be criminally charged and led him out of the school. SSUF ¶ 52. Both O.W. and G.C. spent one night in juvenile detention. *Id*. ¶ 53.

Following the incident, the state brought criminal charges of possession and distribution of child pornography against O.W. in the Juvenile and Domestic Relations Court. CSUF ¶ 36.[7] During the state juvenile proceedings, defense counsel for O.W. filed two suppression motions on the grounds that Mr. Baker's questioning of O.W. in Officer Carr's presence and the request to see the explicit photograph on O.W.'s phone violated his rights under the Fourth and Fifth Amendments of the U.S. Constitution. *Id*. ¶ 37. The state court denied those motions. *Id*. Following trial, the court found the "evidence [was] sufficient for a finding of guilty," but deferred disposition of the matter. *Id*. ¶ 39. Following completion of certain terms and conditions, the Juvenile and Domestic Relations Court dismissed the case against O.W. *Id*.

---

[7]     While O.W. does not dispute the facts recounted in CSUF ¶¶ 36–39, he objects to the admissibility of records from the Juvenile and Domestic Relations Court in this proceeding. Pl.'s City Def. Opp. at 4–5; *see also* Pl.'s Obj. and Emergency Mot. and Accompanying Mem. to Strike Exs., ECF No. 121. The Court need not address O.W.'s evidentiary objections, as it may take judicial notice of the state court's November 6, 2019 and August 17, 2020 orders and the existence of the suppression motions. Under Fed. R. Evid. 201(b)(2), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The Defendants provided copies of the disposition documents and suppression motions, which the Court finds "are not subject to reasonable dispute." *See* Va. Beach Juvenile Ct. Records, ECF Nos. 120-1, 113-7; *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (citing 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106 at 505 (1977)).

## B. Procedural History

O.W.'s mother, Ms. Bass, filed the initial complaint in this action on March 5, 2021, in the Richmond Division of this Court, seeking to proceed *pro se* on behalf of her son. ECF No. 1. On August 2, 2021, the case was transferred to the Norfolk Division. ECF No. 26. On December 17, 2021, Plaintiff was ordered to file an amended complaint to more clearly state his claims and Ms. Bass was advised that while she could not assert claims on behalf of her son on a *pro se* basis, she could assert any claims on her own behalf *pro se*. ECF No. 27.

On January 14, 2022, O.W., by his next friend and parent, Ms. Bass, filed an Amended Complaint, ECF No. 30, and Makiba A. Gaines noticed her appearance as counsel for O.W. ECF No. 29. O.W. filed his Second Amended Complaint on February 28, 2022. ECF No. 53. Subsequently, the City Defendants and the School Defendants moved to dismiss the Second Amended Complaint. ECF Nos. 62, 64. Shortly thereafter, the School Defendants moved to amend their answer. ECF No. 96. Following the close of discovery on August 2, 2022, O.W. sought leave to file a Third Amended Complaint, ECF No. 109, and both sets of Defendants moved for summary judgment. ECF Nos. 115, 117. O.W. then moved to strike certain of Defendants' exhibits and for partial summary judgment. ECF Nos. 121, 122. Subsequently, the City Defendants moved for leave to amend their answer, ECF No. 136, and O.W. moved to amend his reply brief to the School Defendants' Motion for Summary Judgment. ECF No. 145.

The Court will first consider Defendants' requests to amend their answers and O.W.'s Motion to Strike. Then, the Court will resolve the pending summary judgment motions. Finally, the Court will consider O.W.'s Motion to File a Third Amended Complaint.

## II. ANALYSIS

### A. Defendants' Motions to Amend

Both the City Defendants and School Defendants seek to amend their answers to O.W.'s Second Amended Complaint. *See* City Defs.' Mot. Leave File Am. Answer, ECF No. 136; School Defs.' Mot. Leave File Am. Answer, ECF No. 96.

In general, the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, a court "may deny leave to amend for reasons such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

City Defendants seek to amend their answer as it relates to Paragraph 5 of the Second Amended Complaint, which states the Court has jurisdiction, and Paragraph 16, which states that Officer Carr "unlawfully obtained evidence against [O.W.]." Mem. Law Supp. City Defs.' Mot. Leave File Am. Answer at 1–3, ECF No. 137. City Defendants seek to deny these specific allegations and to add collateral estoppel to their asserted affirmative defenses. The Court must consider this motion as the admissions (or lack of admissions) are relevant to the pending motions for summary judgment. Additionally, the City Defendants seek to raise an affirmative defense which similarly must be considered if Plaintiff's motion for leave to amend is granted. The Court finds that Rule 15 is satisfied, and it is in the interest of justice to allow the City Defendants to amend their answer. The denial of these allegations is consistent with the factual record as well as representations made by the City Defendants in other motions. The motion to amend will be granted.

The School Defendants also ask the Court for leave to make one change in their answer related to Paragraph 54 of O.W.'s Second Amended Complaint. School Defs.' Mot. Leave File Am. Answer, ECF No. 96. Since the Court will grant summary judgment in favor of Defendants as to all claims in O.W.'s Second Amended Complaint, it finds that this amendment, which is relevant to the issue of damages, is moot. The Court will therefore deny the motion.

## B.  Plaintiff's Motion to Strike

O.W. asks the Court to strike certain documents from the docket that relate to the proceedings in the Juvenile and Domestic Relations Court filed by Defendants in support of their Motions for Summary Judgment. *See* Mot. Strike, ECF No. 121. He contends that the order from the juvenile court cites to the wrong statutory provision and therefore does not authorize use of his juvenile records in this proceeding, and even if it did, the order is currently vacated pending appeal. *Id*. at 5–6. The School Defendants aver that the July 2022 order allows "all" records associated with O.W.'s criminal charges "to be made available for inspection . . . to the United States District Court for the Eastern-District of Virginia" and that the pending appeal does not vacate the order. School Defs.' Opp. Pl.'s Mot. Strike at 6, ECF No. 126.[8]

O.W.'s statutory argument is unpersuasive. O.W.'s argument is that the Juvenile and Domestic Relations Court's order cited to Va. Code Ann. § 16.1-301, which relates to the disclosure of juvenile *law-enforcement* records, and not Va. Code Ann. § 16.1-305, which relates to the disclosure of juvenile *court* records. Despite the citation to the wrong statute, it is clear from

---

[8]      Although the City Defendants filed the Juvenile and Domestic Relations Court records under seal, the School Defendants did not. Instead, they filed a partially-redacted copy of the records on the public docket. This action may violate the very state court order (which permitted only that the records be made available to the Court, not the public at large) upon which the School Defendants rely. That is not an issue for this Court to decide, but whether a result of gamesmanship or inattention, it has no place in this Court, especially when juveniles are involved.

the face of the order that it was intended to release O.W.'s court records, not his law enforcement records for the Court's inspection.[9] *See* Order for Use and Inspection of Juvenile Records at 2–3, ECF No. 113-7. Because the Juvenile and Domestic Relations Court's intent is clear, the Court finds no reason to strike the court records from the record. O.W.'s contention that the state court's order is vacated pending appeal likewise lacks merit.[10] The Motion to Strike will be denied with prejudice.

### C. Motions for Summary Judgment

The School Defendants and the City Defendants move for summary judgment, and O.W. moves for partial summary judgment. For the reasons set forth below, the Court will grant summary judgment in favor of Defendants, and will deny summary judgment to O.W.

Summary judgment is appropriate when there is no issue of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing cross-motions for summary judgment, the Court will consider each motion separately on its own merits to determine if either party deserves

---

[9]     Moreover, the order cites to a provision allowing release to a "person, agency, or institution . . . having a legitimate interest in the case." Va. Code Ann. § 16.1-301(c)(3); Order for Use and Inspection of Juvenile Records, ECF No. 113-7. This is the same standard used in § 16.1-305(4).

[10]     O.W.'s argument directly conflicts with the statutory language of Va. Code § 16.1-298, which states that, except in circumstances not present here, "a petition for or the pendency of an appeal or writ of error shall not suspend any judgment, order or decree of the juvenile court . . . unless so ordered by the judge of the juvenile court, the judge of a circuit court or directed in a writ of supersedeas by the Court of Appeals or the Supreme Court or a judge or justice thereof." *See also Sasson v. Shenhar*, 667 S.E.2d 555, 562 (Va. 2008). There has been no evidence presented to suggest the order has been suspended.

judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations omitted). In considering each motion, the Court will take care to resolve any factual disputes and "competing, rational inferences" in the light most favorable to the opposing party. *Id*. (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

   a.   *Rooker-Feldman*

   As an initial matter, Defendants argue that this Court lacks subject matter jurisdiction to hear Plaintiff's constitutional arguments based on the *Rooker-Feldman* doctrine. This argument is unpersuasive.

   The *Rooker-Feldman* doctrine is derived from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It stands for the proposition that a federal district court "has no authority to review final judgments of a state court in judicial proceedings." *Feldman*, 460 U.S. at 482. The doctrine should be narrowly applied to only "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In other words, "[i]n order to determine the applicability of the *Rooker-Feldman* doctrine,

the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996); *see also Burrell v. Virginia*, 395 F.3d 508, 512 (4th Cir. 2005).

Defendants argue that the *Rooker-Feldman* doctrine "precludes reconsideration" of the constitutional challenges Plaintiff raised in his state court juvenile criminal proceedings. *See, e.g.*, City Defs.' Mem. Law Supp. Mot. Summ. J. at 12–13 ("City Defs.' Mem."), ECF No. 116. Defendants assert that because Plaintiff challenged his criminal charges on the basis that his Fourth and Fifth Amendment rights were violated (arguments the state court rejected), O.W. is foreclosed from raising those same issues in federal court. *Id.* at 13. O.W. argues that the *Rooker-Feldman* doctrine does not apply because he is not seeking redress of a state court judgment. Pl.'s Resp. Opp. City Defs.' Mot. Summ. J. at 17–21 ("Pl.'s Opp. City Defs.' Mot."), ECF No. 131.

*Rooker-Feldman* does not apply here. O.W. does not ask the Court to review the judgment from his juvenile court proceeding. The Juvenile and Domestic Relations Court ultimately dismissed the criminal case against him. CSUF ¶ 39. The fact that the state court considered and dismissed similar legal challenges is of no moment to the issue of subject matter jurisdiction because O.W.'s Second Amended Complaint presents independent federal law claims, which are not intertwined with the state court judgment. *Jonathan R. ex rel. Dixon v. Just.*, 41 F.4th 316, 340 (4th Cir. 2022), *cert. denied sub nom. Just. v. Jonathan R.*, 143 S. Ct. 310 (2022) ("[W]here the federal complaint presents an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction . . . .'") (citation omitted). The relief O.W. seeks in this lawsuit includes, *inter alia*, "[c]ompensatory damages" based on a purported "loss of liberty," "emotional pain and suffering," "humiliation associated

11

with being arrested on school grounds," and "deprivation of his constitutional liberties." SAC ¶ 156. These alleged injuries arise out of O.W.'s prosecution for possession and distribution of child pornography, which took place prior to, and are distinct from, the Juvenile and Domestic Relations Court's dismissal of his case. This case is not "of the kind" discussed in *Rooker*, *Feldman*, and their progeny, and therefore the doctrine does not apply, and the Court has subject matter jurisdiction.

b. <u>Collateral Estoppel</u>

The City Defendants also assert that Plaintiff's constitutional claims are barred by the doctrine of collateral estoppel. They are not.

The doctrine of collateral estoppel applies to constitutional claims, like O.W.'s, brought under 42 U.S.C. § 1983. *Allen v. McCurry*, 449 U.S. 90 (1980). The doctrine requires the Court "to give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so." *Id.* at 96. In Virginia, collateral estoppel requires: "(1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied." *Doe 2 ex rel. Doe 1 v. Fairfax Cnty. Sch. Bd.*, 384 F. Supp. 3d 598, 605 (E.D. Va. 2019), *aff'd*, 832 F. App'x 802 (4th Cir. 2020) (quoting *Whitley v. Commonwealth*, 538 S.E.2d 296, 299 (Va. 2000)). Moreover, "[i]t is the party seeking to preclude a factual issue that bears the burden of demonstrating that these four elements are satisfied." *Id.*

The City Defendants argue that the state court's denial of O.W.'s motions to suppress precludes relitigation of "identical matters" in this Court, which is relevant to the second element

of the doctrine—whether the issues have been actually litigated. City Defs.' Mem. at 15. O.W. contends that the City Defendants fail to establish the other three elements of the doctrine. Specifically, he argues that res judicata does not apply because Officer Carr and the City of Virginia Beach were not parties to his juvenile proceeding, the denial of his constitutional challenges in state court was not "essential" to the dismissal of his case, and the dismissal order itself does not constitute a "final judgment." Pl.'s Opp. City Defs.' Mot. at 21. For their part, the City Defendants only respond to one of O.W.'s arguments. They argue that Officer Carr and the City can assert preclusion despite not being part of the criminal proceedings because they both are "in privity" with the Commonwealth of Virginia, and that even if they were not, non-mutual issue preclusion applies. City Defs.' Reply Pl.'s Opp. City Defs.' Mot. Summ. J. at 15, ECF No. 141.

In failing to respond to most of O.W.'s arguments, the City Defendants have not met their burden to show that each of the elements of preclusion is satisfied. Moreover, it is clear that the third element is lacking—the state court's rejection of O.W.'s constitutional challenges was not "essential" to the dismissal of his criminal action. In *Petrus v. Robbins*, the Supreme Court of Virginia explained that "[t]o render the judgment conclusive, it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried or determined,— that is, that the verdict *could not have been rendered* without deciding that matter." *Haring v. Prosise*, 462 U.S. 306, 315 (1983) (quoting *Petrus v. Robbins*, 83 S.E.2d 408, 412 (Va. 1954)) (emphasis added). Here, the ultimate dismissal of the action against O.W. in the Juvenile and Domestic Relations Court could have occurred absent O.W.'s unsuccessful constitutional objections. Therefore, O.W.'s claims are not estopped, and the Court will proceed to consider them on the merits.

c.  Count I – 42 U.S.C. § 1983, Fourth, Fifth and Fourteenth Amendments

In Count I, O.W. alleges that the School Defendants[11] violated his rights under the Fourth, Fifth, and Fourteenth[12] Amendments of the Constitution. O.W. brings these claims under 42 U.S.C. § 1983, which imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. For the reasons below, the Court will grant summary judgment as to Count I in favor of the School Defendants.

1.  *Fourth Amendment*

The Court begins with an analysis of O.W.'s Fourth Amendment claim against Mr. Baker. O.W. alleges that Mr. Baker violated his Fourth Amendment rights when Mr. Baker "confiscated" his phone, "searched the photo gallery," and "did not find the [explicit] photograph." SAC ¶ 30.[13]

---

[11]    Although O.W. also includes argument related to Officer Carr in his motion papers, his Second Amended Complaint does not allege Fourth, Fifth, or Fourteenth Amendment violations against Officer Carr. Therefore, the Court does not address these arguments.

[12]    As to any claims under the Fourteenth Amendment, O.W's allegations are scant. O.W. asserts that the School Defendants violated his right to "fairness and adequacy in the procedures employed by the government to deprive Plaintiff of his liberty and property, and against arbitrary impairments of his substantive rights and entitlements, under the Due Process Clause of the Fourteenth Amendment." SAC ¶ 99(c). O.W.'s only other reference to the Due Process Clause comes more than fifty paragraphs earlier, in his Statement of Facts, where he asserts that the School Defendants violated the Due Process Clause and the Family Educational Rights and Privacy Act ("FERPA") by releasing his educational records for a "non-emergency criminal investigatory purpose." SAC ¶¶ 40–42. From this, the Court cannot discern a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). As such, to the extent that O.W. seeks to raise claims under the Fourteenth Amendment, the Court will dismiss them without prejudice. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[13]    The Court notes that O.W. also alleges in his Second Amended Complaint that he had "a reasonable expectation of privacy in his education records, which were searched and seized by Defendants for criminal investigative purposes; and Plaintiff possessed a protected property and/or liberty interest in his education records under FERPA, on which Plaintiff relied on for protection of his confidential records." SAC ¶ 41. First, to the extent O.W. seeks to allege that his education

14

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. In most instances, the Fourth Amendment does not permit searches absent a warrant supported by probable cause. *Katz v. United States*, 389 U.S. 347, 356–57 (1967). In schools, however, these requirements are modified and the "reasonableness" of the search is determined by a two-pronged analysis: (1) "whether the . . . action was justified at its inception," and (2) whether the search "was reasonably related in scope to the circumstances which justified the interference in the first place." *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). A search by a school official is "justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating the law or the rules of the school." *Id.* at 342. This analysis also applies to searches and seizures in schools by law enforcement officers "when a student is suspected of also breaching a criminal law." *Wofford v. Evans*, 390 F.3d 318, 327 (4th Cir. 2004).

The School Defendants argue that Mr. Baker did not violate O.W.'s constitutional rights because he conducted the search of O.W.'s cellular phone with "reasonable suspicion" based on the report he received from a teacher that O.W. may have been in possession of an explicit photograph of another student. School Defs.' Mem. Law Supp. Mot. Summ. J. at 15–16 ("School Defs.' Mem."), ECF No. 118. Plaintiff argues that even if the standard set forth in *T.L.O.* applies,[14]

---

records were searched in violation of the Fourth Amendment, he fails to make sufficient allegations that would allow the Court to adjudicate this claim, and as such, any potential claim is dismissed without prejudice. *See Bell Atl. Corp.*, 550 U.S. at 556. Second, O.W. has abandoned any FERPA claim against the School Board by choosing to remove the cause of action from his Second Amended Complaint. *See* Am. Compl. ¶¶ 130–35, ECF No. 30.

[14]  O.W. contends that a different standard applies to his Fourth Amendment claim. He argues the analysis should be guided by the Supreme Court's decision in *Ferguson v. Charleston*, 532

the scope of the search was unreasonable because "Plaintiff's conduct was in the category of ordinary, immature behaviors society expects from teenagers." Pl.'s Resp. Opp. School Defs. Mot. Summ. J. at 9–10 ("Pl.'s Opp. School Defs.' Mot."), ECF No. 132.

The search did not violate the Fourth Amendment. Mr. Baker's search and seizure of O.W.'s phone followed a report by a teacher that O.W. may have been in possession of an explicit photograph of a female student. CSUF ¶ 15. Possessing such a photograph is a violation of the Virginia Beach City Public Schools Code of Student Conduct. Virginia Beach Public Schools Code of Student Conduct, Rule 9, ECF No. 65-1 (prohibiting "[p]ossession of offensive materials such as nude photographs"). It is also against the law. *See* Va. Code Ann. § 18.2-374.1:1(C). Moreover, a student's use of a cellular phone in school is itself regulated by Kempsville's "Bring Your Own Device" policy, which provides that the student's right to carry a cellular phone can be "limited or revoked" if the device is "used by a student to disrupt the educational environment." Virginia Beach Public Schools Code of Student Conduct at 4, ECF No. 65-1.

Given the circumstances, Mr. Baker's search was "justified at its inception" and "reasonably related in scope." *T.L.O.*, 469 U.S. at 341. First, it was reasonable for Mr. Baker to take O.W.'s cellular phone away from him and search it. Reasonable grounds existed for

---

U.S. 67 (2001), a case involving a task force comprised of the Medical University of South Carolina, police, and local officials, who set up a policy to identify and test pregnant patients for evidence of drug use, without any individualized suspicion. *Id.* at 70. The Court ultimately found that that program violated the Fourth Amendment by "weigh[ing] the intrusion on the individual's interest in privacy against the 'special needs' that supported the program." *Id.* at 78. O.W. compares the task force in *Ferguson* to the relationship between Virginia Beach Public Schools and the Virginia Beach Police Department, as laid out in their Memorandum of Understanding ("MOU"), ECF No. 65-2, arguing it is similarly unconstitutional. However, O.W. overlooks a key difference between the cases—*Ferguson* involved the permissibility of *suspicionless* searches; here there is no allegation that Mr. Baker searched his phone without suspicion. Moreover, O.W.'s contention that school officials must obtain warrants before searching students is highly impractical and lacks legal support.

suspecting that the search would turn up relevant evidence because a teacher had reported to Mr. Baker that O.W. may have possessed an explicit photograph of another student. It was reasonable to conclude that any explicit photograph would be found on O.W.'s cellular phone. Possession of an explicit photograph is a serious violation of school rules and the law. And seizing O.W.'s phone prevented further disruptions to the educational environment, *id.* at 342, given that according to O.W., "everyone was talking about" the photograph at school that day. SSUF ¶ 22; *see also Piechowicz v. Lancaster Cent. Sch. Dist.*, No. 17-cv-00845V(F), 2022 U.S. Dist. LEXIS 8935, at *55 (W.D.N.Y. Jan. 18, 2022); *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp. 3d 721, 725 (E.D. Va. 2014); *Milligan v. City of Slidell*, 226 F.3d 652, 656 (5th Cir. 2000) ("Students at school . . . have a significantly lesser expectation of privacy in regard to the temporary 'seizure' of their persons than does the general population."). Second, the search was also "reasonably related in scope to the circumstances which justified the interference in the first place." Mr. Baker "instructed Plaintiff to open [the phone] for further inspection" and searched "the photo gallery of the phone." SAC ¶ 29. Mr. Baker limited the search to the photo gallery and did not otherwise search the phone. Because the photo gallery is a likely place for a photograph to be stored and given the limited nature of the search, the search was not overbroad.

2. *Fifth Amendment*

O.W. also alleges that he was "detained" and "interrogat[ed]" by Mr. Baker, who "pressured and coerced" him to confess to possessing and sharing the explicit image in violation of his Fifth Amendment right "to not be compelled in a criminal case to be a witness against himself." SAC ¶¶ 29, 99(b). O.W. asserts that his "confessions were involuntary in the totality of all the unlawful circumstances surrounding his arrest." Pl.'s Opp. City Defs.' Mot. at 14.

The Fifth Amendment, as applied to the States through the Fourteenth Amendment,[15] requires that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. To determine whether a confession was voluntary or improperly compelled, the Court must consider whether it was the "product of a free and deliberate choice rather than intimidation, coercion or deception." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986). "Coercive police activity is a necessary finding for a confession . . . to be considered involuntary, [and] the mere existence of threats, violence, implied promises, improper influence, or other coercive police activity does not automatically render a confession involuntary." *United States v. Giddins*, 858 F.3d 870, 881 (4th Cir. 2017) (cleaned up). In determining voluntariness, the Court is required to consider "the totality of all the surrounding circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Among the factors to be considered include the individual's age, education, whether a *Miranda* warning was given,[16] the length of the detention and questioning, and the use of physical punishment. *Id.* "Special care" must be exercised in applying the voluntariness test to confessions of children. *Haley v. State of Ohio*, 332 U.S. 596, 599 (1948); *see also J.D.B. v. North Carolina*, 564 U.S. 261 (2011).

The questioning of O.W. began with Mr. Baker removing him from class following a report by a teacher that he may have been in possession of an explicit photograph of another student. SSUF ¶ 24. Mr. Baker first took O.W. to the printing room, asked him some initial questions about

---

[15]     *Malloy v. Hogan*, 378 U.S. 1 (1964). Since O.W. is suing state, rather than federal, actors the Court's references to the Fifth Amendment should be understood to refer to the Fourteenth Amendment's incorporation of these protections against state actors.

[16]     Failure to provide warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), is not in itself actionable under 42 U.S.C. § 1983 because the failure to provide these warnings is not a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Vega v. Tekoh*, 142 S. Ct. 2095, 2101 (2022).

the incident, and then proceeded to take him to the lobby of the school guidance office. *Id.* ¶¶ 29, 31. There, he asked O.W. to write an incident statement, and then a second, determining that in the first O.W. was not telling the entire story. *Id.* ¶¶ 34, 36. O.W. wrote in the second statement: "I showed people the photo and that was my bad." O.W. Dep. 36:15–38:1, ECF No. 113-3. Then, Mr. Baker took O.W. to a room connected to the guidance office and asked him additional questions about the incident. *Id.* ¶ 39. It was during this questioning that Officer Carr entered the room. Up until this point, O.W. does not allege that he was coerced.[17]

Once in the room with Mr. Baker and Officer Carr, Mr. Baker asked O.W. questions about the statements he had written and advised him about the importance of being honest. Baker Dep. Vol. I 44:9–11, ECF No. 113-4. He testified that he told O.W. something akin to "if you're not telling me the truth, you know, there's a violation against the Student Code of Conduct" and "I need you to be honest with me, please tell me what was going on." Baker Dep. Vol. II 58:6–25, ECF No. 123-2; PSUF ¶ 16. O.W. alleges in his Second Amended Complaint that Officer Carr did not ask him any questions prior to his confession. SAC ¶¶ 26, 34. O.W. then admitted to Mr. Baker that he still possessed the photograph and that he had sent it to another student. CSUF ¶ 27. These admissions, and Officer Carr's subsequent search of O.W.'s phone to confirm that he, in fact, had the photograph, provided Officer Carr with sufficient information to bring criminal charges against O.W.

As an initial matter, O.W. makes this Fifth Amendment claim against Mr. Baker, a school official, rather than a law enforcement officer. While he is required to establish "coercive police activity," *see Giddins*, 858 F.3d at 881, the fact that O.W. fails to bring his claim directly against

---

[17] O.W.'s Second Amended Complaint does not reference the initial discussion between Mr. Baker and O.W. in the printing room. His allegations related to coercion begin with Mr. Baker and Officer Carr in the guidance office. *See* SAC ¶¶ 24–29.

law enforcement is not fatal. Courts have recognized that the Fifth Amendment may be implicated during interviews conducted by school officials when law enforcement is involved. *See, e.g.*, *J.D. v. Commonwealth*, 591 S.E.2d 721, 726 (Va. App. 2004).[18] "[W]hen a student is interrogated in the presence of a[] [school resource officer]—even when the SRO remains silent—the presence of the officer can create a coercive environment" as "juveniles are uniquely susceptible to police pressure and may feel compelled to confess when a reasonable adult would not." *Matter of D.A.H.*, 857 S.E.2d 771, 782 (N.C. 2021) (citing *J.D.B.*, 564 U.S. at 277).

O.W. argues his statements were coerced because of his age; the small size and location of the room he was questioned in; the length of the questioning; Baker's threat to discipline him if he did not confess; Officer Carr's presence; and the absence of a friend, attorney, or anyone else to aid him. Mem. Law Supp. Pl.'s Mot. Partial Summ. J. at 21, ECF No. 123. School Defendants assert that the door to the room was kept open and that Baker never threatened O.W. School Defs.' Resp. Opp Pl.'s Mot. Partial Summ. J. at 25–26, ECF No. 139.

The Court finds that the statements O.W. made to Mr. Baker in the presence of Officer Carr were voluntary. The questioning was conducted by a school official in a familiar setting—the school guidance office—and the entire incident occurred over the course of an afternoon.[19]

---

[18]    While the Court of Appeals of Virginia applied the Fifth Amendment voluntariness test to an interview of a student by an assistant principal with a school resource officer present, it found that the prophylactic warnings established by *Miranda v. Arizona*, 384 U.S. 436 (1966), were not required under the circumstances. The Court based its decision on the fact that the school official "was not acting as a police officer or as a governmental agent with law enforcement authority," that the school official "did not act at the direction of the police," and that the school resource officer did not participate in the interview. *J.D.*, 591 S.E.2d at 724–25. Here the Court is not asked to determine whether *Miranda* applies, but instead to consider whether, considering the totality of circumstances, O.W.'s confession was coerced.

[19]    In this environment, the Court does not find the size or location of the room in the guidance office or that O.W. was not permitted to leave school during the investigation (3–4 hours by O.W.'s

Importantly, O.W. admitted that he had shown the photograph to other students before any alleged coercion began. Although certain facts—O.W.'s age, that he was alone, Officer Carr's presence, and Mr. Baker's admonition about violating the Student Code of Conduct— may have influenced O.W., they are not enough, without more, to suggest O.W.'s will was overborne.[20]

O.W.'s Fourth and Fifth Amendment claims against Mr. Baker fail. As the allegations against the remainder of the parties named in Count I are based on the allegations against Mr. Baker, they also fail. The Court will grant summary judgment in favor of the School Defendants as to Count I.

### d.   Count II – 42 U.S.C. § 1983, Civil Conspiracy[21]

O.W. alleges that Officer Carr and the City of Virginia Beach engaged in a civil conspiracy to deprive him of his Fourth, Fifth, and Fourteenth Amendment rights. As O.W. fails to establish the elements of civil conspiracy under 42 U.S.C. § 1983, the Court will dismiss Count II.

"To establish a civil conspiracy under § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). To establish conspiratorial intent, "[plaintiff's]

---

account) to be coercive. *See* O.W. Dep. 45:13–17, ECF No. 118-4 (stating he was taken out of class by Mr. Baker at "two something" and stayed in the office until 6 p.m.).

[20]     While the Court concludes that O.W.'s statements were voluntary, it does not condone the investigatory techniques practiced by the City and the School Board. According to the MOU between these two entities, "questioning of students by law enforcement officers" requires the principal to make a "reasonable effort" to notify parents and guardians when this occurs. MOU § VI.C. However, there are no similar regulations related to the practice at issue here, where a student is being interviewed by school officials in the presence of a school resource officer.

[21]     O.W. abandons this claim in his proposed Third Amended Complaint. *See* ECF No. 109-1. Nevertheless, the Court will rule on summary judgment in order to avoid confusion going forward.

evidence must, at least, reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*

The City Defendants argue this claim must fail because O.W. does not establish an underlying constitutional violation, and that even if he had, O.W. fails to provide sufficient circumstantial evidence of a conspiratorial objective. City Defs.' Mem. at 19–20. In support of his claim, O.W. alleges there was a "direct meeting of the minds" between Officer Carr and Mr. Baker (who is not named in this Count), as well as a partnership between the City and the School Board (who is also not named in this Count), "to jointly extract incriminating evidence from students for criminal investigatory purposes, in violation of those students' Fourth, Fifth, and often Sixth Amendment rights." Pl.'s Opp. City Defs.' Mot. at 16. Plaintiff argues that Officer Carr and the City of Virginia Beach conspired to use "the [Virginia Beach Public Schools'] disciplinary process as a backdoor to affording [sic] Plaintiff criminal safeguards and to coerce his confession." SAC ¶ 105. As evidence of this, Plaintiff points to the Memorandum of Understanding ("MOU"), ECF No. 65-2, between the School Board of the City of Virginia Beach and the Virginia Beach Police Department. The MOU provides for coordination between these two entities when criminal activity occurs on campus, including provisions concerning police questioning and search and seizure. MOU at VI, VIII, ECF No. 65-2.

Plaintiff's claim fails. The Court need not consider whether Officer Carr or the City of Virginia Beach committed an underlying violation of O.W.'s Fourth, Fifth, and Fourteenth Amendment rights because O.W. fails to provide any evidence of conspiratorial intent. Plaintiff's citation to the MOU is insufficient to establish that the members of the alleged conspiracy shared an intent to deprive Plaintiff of his constitutional rights. While O.W. is not required to come forward with direct evidence, he has a "weighty burden" and must show "specific circumstantial

evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421. Here, while it is clear that there was an agreement between the City and School Board to coordinate when responding to criminal activity, it is unreasonable to infer, without more, that this was an agreement to deprive Plaintiff of his constitutional rights. Plaintiff fails to point to anything in the MOU that was unlawful or explain how the terms of the MOU establish an agreement to deprive Plaintiff of his constitutional rights.   The Court will grant summary judgment in favor of the City Defendants as to Count II.

     e.   Count III – Racially Motivated Civil Conspiracy[22]

O.W. alleges all Defendants engaged in a racially motivated civil conspiracy against him, in violation of 42 U.S.C. § 1985(3).[23] A § 1985(3) claim requires a separate underlying constitutional violation. *See McNutt v. Duke Precision Dental & Orthodontic Labs., Inc.*, 698 F.2d 676, 680 (4th Cir. 1983) ("Section 1985(3) merely provides a remedy for the violation of rights guaranteed by federal law or the Constitution."). As O.W. does not plead an underlying constitutional violation based on race, the Court will grant summary judgment in favor of Defendants as to Count III.

---

[22]   O.W. abandons this claim in his proposed Third Amended Complaint. *See* ECF No. 109-1. Nevertheless, the Court will rule on summary judgment in order to avoid confusion going forward.

[23]   The Fourth Circuit has held that a § 1985(3) claim requires a showing of: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).

f.   Count IV – Equal Protection Based on Sex[24]

O.W. alleges that Officer Carr, Mr. Baker, Ms. Jenkins, and the School Board discriminated against him on the basis of his sex in violation of the Equal Protection Clause of the Fourteenth Amendment. As O.W. fails to show that he was inappropriately "singled out" or that Defendants' actions were "invidious or in bad faith," the Court will grant summary judgment in favor of Defendants as to Count IV.

The Fourteenth Amendment to the U.S. Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Further, "within the context of a gender-based discrimination claim, government action whose effects burden one sex more than another does not violate the Equal Protection Clause absent a showing of intentional or purposeful discrimination." *Doe v. Fairfax Cnty. Sch. Bd.*, 403 F. Supp. 3d 508, 515 (E.D. Va. 2019) (citing *Mass. v. Feeney*, 442 U.S. 256, 273 (1979)). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

An equal protection claim can be based on "selective enforcement," *i.e.*, that "the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Doe 2 ex rel. Doe 1 v. Fairfax Cnty. Sch. Bd.*, 384 F. Supp. 3d 598, 606–07 (E.D. Va. 2019), *aff'd*, 832 F. App'x 802 (4th Cir. 2020). "The defendant must establish both (1) that he has been 'singled

---

[24]   O.W. abandons this claim as to Mr. Baker, Ms. Jenkins, and the School Board in his proposed Third Amended Complaint. ECF No. 109-1. Nevertheless, the Court will rule on summary judgment in order to avoid confusion going forward.

out' while others similarly situated have not been prosecuted; and (2) that the decision to prosecute him was 'invidious or in bad faith.'" *United States v. Greenwood*, 796 F.2d 49, 52 (4th Cir. 1986).

The School Defendants argue that O.W. and A.F., the female student who sent him the explicit photograph, were not similarly situated because O.W.'s actions took place at Kempsville during school hours, while A.F.'s actions did not, and that there is no evidence of bad faith. School Defs.' Mem. at 18. The City Defendants argue that Officer Carr did not act in bad faith in prosecuting O.W. given O.W.'s "acknowledgement of guilt, and the inculpatory statements he admits providing to Baker." City Defs.' Mem. at 26–27. In support of his claim, O.W. argues that A.F. engaged in more serious conduct than he did—producing child pornography—but received no punishment from Officer Carr or Kempsville. SAC ¶¶ 117, 119, 120. He claims that he was "situated identically" to A.F., and that "A.F. was even more culpable having created the image in the first place." Pl.'s Opp. City Defs.' Mot. at 29. For these reasons, O.W. argues that Officer Carr's and Kempsville's decision to punish him was a violation of his rights under the Fourteenth Amendment's Equal Protection Clause. *Id.* at 29–30.

Plaintiff's claim fails. O.W. is unable to show that he was similarly situated to A.F. and puts forward no facts to support the inference that Officer Carr or Kempsville's actions were "invidious or in bad faith." *Greenwood*, 796 F.2d at 52. A.F. and O.W. were not similarly situated—there is no dispute that A.F. sent O.W. the explicit photograph in the evening when they both were at home. SSUF ¶ 14. There is also no evidence that A.F. showed the explicit photograph to classmates or sent it to anyone while at school, as O.W. admitted to doing. Finally, O.W.'s purported evidence that Officer Carr's and Kempsville's actions were "invidious or in bad faith" is merely that O.W. was charged and A.F. was not. This is not sufficient to show intent.

The Court will grant summary judgment in favor of the School Defendants as to Count IV.

g.   Counts V, VI, VII, VIII – Failure to Protect,[25] Negligence, Negligence Per Se

O.W. alleges that the School Defendants failed to protect his Fourth, Fifth, and Fourteenth

Amendment rights and are liable for negligence and negligence per se under Virginia state law.

For the reasons below, the Court will grant summary judgment in favor of Defendants as to Counts

V–VIII.

Underlying O.W.'s claims is the notion that the School Defendants have a duty to protect

his constitutional rights under "special relationship" and "state created danger" theories and failed

to do so. The Fourth Circuit has recognized certain circumstances where a state actor "is in a

special relationship to a private individual [and] acquires a duty to act on that individual's behalf."

*Waybright v. Frederick Cnty.*, 528 F.3d 199, 207 (4th Cir. 2008). This is derived from the Supreme

Court's decision in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189

(1989), where the Court held that the state violates the Eighth Amendment and the Due Process

Clause of the Fourteenth Amendment when it "so restrains an individual's liberty that it renders

him unable to care for himself, and at the same time fails to provide for his basic human needs."

*Id.* at 200. The *DeShaney* Court also suggested that the State "voluntarily undertaking to protect

[an individual] against a danger" could create a "duty under state tort law." *Id.* at 201.

As to the special relationship theory, the School Defendants argue that "such a relationship

between the school and the pupil" is not sufficient to create a "special relationship" under

*DeShaney*. School Defs.' Mem. at 18. O.W. responds by arguing that while "students do not

automatically enjoy a special relationship with a school authority," the Virginia Beach School

---

[25]     O.W. abandons these claims as to certain School Defendants in his proposed Third
Amended Complaint. *See* ECF No. 109-1. Specifically, O.W. abandons his failure to protect claim
against all School Defendants and abandons his state law negligence claims against the School
Board. *Id.*

Board enacted a regulation stating that it shall "protect the constitutional rights" of minor students entrusted to its care, and O.W. "had an interest and expectation in such protection." Pl.'s Opp. School Defs.' Mot. at 17 (quoting Sch. Bd. City Va. Beach Regul. 5-64.1).

O.W. cannot establish a special relationship. The Fourth Circuit has unequivocally stated that a student's attendance in public school does not create the kind of relationship contemplated in *DeShaney*. *See Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ.*, 3 F. App'x 25, 31 (4th Cir. 2001) ("When a student attends public school, his liberty is not restrained to the extent contemplated in *DeShaney*. Attending school is not the equivalent of incarceration or institutionalization."). The School Board regulation does not change this conclusion. *DeShaney* made clear that the special relationship arose not "from [the State's] expressions of intent to help . . . but from the limitation which it has imposed on his freedom to act on his own behalf." 489 U.S. at 200. The Fourth Circuit has described this limitation on freedom as "incarceration, institutionalization, or the like." *Pinder v. Johnson*, 54 F.3d 1169, 1175 (4th Cir. 1995). The statements by the School Board do not change the nature of the school environment's restriction on a student's liberty.[26]

As to the state created danger theory, the School Defendants argue that it cannot be the case that the state is liable "every time it does anything that makes injury at the hands of a third party more likely." School Defs.' Mem. at 23. O.W. argues Kempsville acquired a duty because Baker "increased the risk" of harm to him by agreeing to jointly investigate him with Officer Carr, allegedly putting Officer Carr in a position to deprive him of his constitutional rights. Pl.'s Opp. School Defs.' Mot. at 22.

---

[26]   Since the Court does not find that O.W. has established a duty under the special relationship theory, it need not consider his claims that the School Defendants breached that duty and are liable in negligence or negligence per se. *See* SAC ¶¶ 126–27.

O.W. cannot prevail on a state created danger theory. The harm O.W. alleges—the violation of his Fourth, Fifth, and Fourteenth Amendment rights by Officer Carr—is not the kind of physical "danger" that *DeShaney* contemplated could create a duty under state tort law. *See, e.g.*, 489 U.S. at 192–93 (harm involved severe brain damage); *Pinder*, 54 F.3d at 1172 (harm involved death); *Doe v. Rosa*, 795 F.3d 429, 440 (4th Cir. 2015) (harm involved sexual abuse). As such, the Court need not address whether Officer Carr violated O.W.'s constitutional rights.

The Court will grant summary judgment in favor of the School Defendants as to Counts V–VIII.

h. Counts IX, X – *Monell* Liability

O.W. alleges that all Defendants are liable in their official capacities for constitutional violations under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). The Court construes these claims as against the two municipal parties to the lawsuit, the City of Virginia Beach and the School Board of the City of Virginia Beach. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (stating that suits against government officials in their official capacity are properly "treated as a suit against the entity" because the entity is "the real party in interest"). As O.W. fails to identify any underlying constitutional violations that the City or School Board could be held liable for, the Court will grant Defendants' motions for summary judgment as to these claims.

Under *Monell*, a municipality can be held liable for constitutional violations "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under § 1983." *Hunter v. Town of Mocksville*, 897 F.3d 538, 554 (4th Cir. 2018) (citing *Monell*, 436 U.S. at 694). A municipality's failure to train its officers can

also serve as an "official policy" for purposes of *Monell* liability, but "a failure to train can only form a basis for liability if 'it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations.'" *Lytle v. Doyle*, 326 F.3d 463, 471, 474 (4th Cir. 2003).

Defendants argue that *Monell* is not implicated because O.W. has not established an underlying constitutional violation. School Defs.' Mem. at 24; City Defs.' Mem. at 27. O.W. contends, however, that the MOU between the School District and the City is an unlawful policy, practice, or custom because it "focuses wholly on methods of crime control throughout the school system," SAC ¶¶ 76, 133–139, and that it is "unlawful for the [Virginia Beach Police Department] to conduct criminal investigations through [Virginia Beach City Public School] personnel." Pl.'s Opp. School Defs.' Mot. at 23.

The Court agrees with Defendants that O.W. does not establish any constitutional violation for which the School Board or the City could be held liable under *Monell*. As discussed *supra* in the Court's analysis of Count II, O.W. does not explain how the policy set forth in the MOU violates his constitutional rights. Therefore, the Court need not consider whether such a violation could be fairly attributed to these municipal entities under *Monell*.

The Court will grant summary judgment in favor of the Defendants as to Counts IX and X.

i.  <u>Count XI – Title IX</u>[27]

O.W. alleges that the School Board violated Title IX of the Educational Amendments of 1972 because A.F. sexually harassed him by sending him the explicit photograph. For the reasons set forth below, the Court will grant summary judgment in favor of the School Board as to Count XI.

---

[27]    O.W. abandons this claim in his proposed Third Amended Complaint. *See* ECF No. 109-1. Nevertheless, the Court will rule on summary judgment in order to avoid confusion going forward.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Moreover, "[t]o establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that (1) [he] was a student at an educational institution receiving federal funds, (2) [he] was subjected to harassment based on [his] sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007).

The School Defendants concede that the School Board receives federal funds, but argue that O.W. was not subjected to harassment because he asked A.F. to send him the explicit photograph and he expected to receive it. School Defs.' Mem. at 27. O.W. disputes that he asked A.F. to send him the photograph. Pl.'s Opp. School Defs.' Mot. at 3.

O.W.'s claim lacks merit. It is undisputed that A.F. sent the explicit photograph in the evening when both of them were at home. SSUF ¶ 14. O.W. does not meaningfully articulate how sending an explicit picture to another student (even if unsolicited) constitutes "harassment based on [his] sex," how it created a hostile or abusive environment at school, or why the actions of A.F. are fairly attributable to Kempsville.

The Court will grant summary judgment in favor of the School Board as to Count XI.

### D.  Plaintiff's Motion to File a Third Amended Complaint

While the Court's foregoing decision on summary judgment resolves all claims in O.W.'s Second Amended Complaint, O.W.'s Motion for Leave to File a Third Amended Complaint remains pending. ECF No. 109. In the proposed amended complaint, O.W. seeks to add numerous

claims. Specifically, the proposed amended complaint brings a direct claim against Officer Carr for a violation of his Fourth, Fifth, and Fourteenth Amendment rights; a Fourteenth Amendment Equal Protection Clause claim based on race against some of the School Defendants; a separate supervisory liability claim against some of the School Defendants; and a conversion/trover claim against the City of Virginia Beach arising from the seizure of O.W.'s cellular phone. The proposed amended complaint also materially changes certain factual allegations and modifies various existing claims by adding or removing defendants. Finally, the proposed amended complaint removes some claims entirely, specifically the civil conspiracy claim, racially motivated conspiracy claim, state created danger special relationship claim, and the Title IX claim. *See* Mot. to File Third Am. Compl. at 2–3, Ex. 1.

As previously noted, the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, a court "may deny leave to amend for reasons such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court will deny without prejudice O.W's Motion to File a Third Amended Complaint, and order O.W.—if he desires to continue the prosecution of his case in this forum—to seek leave to file a Third Amended Complaint within thirty (30) days from today's date. The Court concludes that proceeding in this way is necessary in light of the Court's grant of summary judgment in favor of Defendants, the substantial changes O.W. proposes in his Third Amended Complaint, and the instruction to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Additionally, the parties' existing briefing fails to adequately address whether "the amendment would be

prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182).

The parties are advised to carefully consider today's decision and avoid rehashing legal arguments that have already been rejected by the Court. Any proposed complaint submitted by O.W. should stand on its own without reference to any prior complaints, clearly separate out each theory of liability, and reference facts that would state a plausible claim for relief given the existing record in this case. The Defendants should be sure to adequately consider whether any proposed amended complaint filed by O.W. would be futile. The parties are also advised that any additional motions to amend will be viewed critically. While the Court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a), this rule (and all of the Federal Rules of Civil Procedure) "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1.

### III. CONCLUSION

For the reasons set forth above, the Court will grant summary judgment in favor of Defendants and deny summary judgment to O.W. As to O.W.'s Motion to File a Third Amended Complaint, ECF No. 109, the Court will deny the motion without prejudice, and direct O.W.—if he desires to continue the prosecution of his case in this forum—to file a revised motion within thirty (30) days from today's date. As to the remainder of the pending motions, Defendants' Motions to Dismiss will be denied as moot, ECF Nos. 62, 64; the City Defendants' Motion for Leave to File Amended Answer will be granted, ECF No. 136; the School Defendants' Motion for Leave to File Amended Answer will be denied as moot, ECF No. 96; O.W.'s Motion to Strike will

be denied with prejudice, ECF No. 121; and O.W.'s Motion to Amend Reply Brief will be granted, ECF No. 145.

     An appropriate order shall issue. The parties are directed to contact the undersigned's Courtroom Deputy within seven (7) days from today's date to schedule a status conference.

/s/

_____

Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: February 14, 2023